**Opinion filed August 11, 2016**



# In The

# Eleventh Court of Appeals

_____

## No. 11-14-00216-CR

_____

## MATTHEW SCOTT NAVARRO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR21833**

## M E M O R A N D U M   O P I N I O N

The jury convicted Matthew Scott Navarro of the offense of capital murder. *See* TEX. PENAL CODE ANN. § 19.03 (West Supp. 2015). Pursuant to Section 12.31 of the Texas Penal Code, the trial court assessed his punishment at life imprisonment without parole. *Id.* § 12.31. Appellant raises seven issues on appeal. We affirm.

In Appellant's first issue, he argues that the trial court abused its discretion and deprived him of his Sixth Amendment right to counsel when it denied Appellant's request that his trial counsel be appointed to also handle this appeal. In

Appellant's second issue, he asserts that Section 12.31(a)(2) of the Texas Penal Code violates the Eighth Amendment prohibition of cruel and unusual punishment as applied to Appellant. In Appellant's third issue, he contends that the trial court abused its discretion and caused some harm when it overruled Appellant's objection to an instruction on the law of parties in the trial court's charge to the jury. In Appellant's fourth issue, he argues that the trial court abused its discretion when it allowed inadmissible evidence of extraneous misconduct. In Appellant's fifth issue, he contends that the trial court abused its discretion when it allowed inadmissible and harmful statements "under the guise of the statement of co-conspirator rule." In Appellant's sixth issue, he argues that the trial court abused its discretion when it denied Appellant's motion for new trial, which he based upon a claim of spoliation of evidence. In Appellant's seventh issue, he alleges that he was also entitled to a new trial because of the cumulative effect of extensive spoliation of evidence, an overabundance of leading questions by the prosecution, and the prosecution's use of false evidence.

On December 11, 2009, Appellant, Pedro Rocha, Efrain Castillo, and Alex Gil Jr. broke into Ronald and Randall Philen's house to steal marihuana. Appellant and the three men each had a gun with them. Gil and Castillo both testified that they got the guns from Appellant's house. The four men arrived at the Philens' house around three in the morning; they kicked in one of the doors to gain access to the house. Once inside the house, they found Randall Philen in the kitchen. Gil and Castillo pointed their guns at Randall and made him drop to the ground and put his hands behind his back. Meanwhile, Appellant and Rocha went to another part of the house to look for the marihuana. Within minutes after they entered the house, gunshots were fired, and Ronald Philen died as a result.

We will first address Appellant's third issue, in which he argues that the trial court abused its discretion and caused some harm when it overruled Appellant's

objection to an instruction on the law of parties in the trial court's charge to the jury. Under the law of parties, a person may be charged as a party to the offense if the offense is committed by his own conduct or by the conduct of another for whom he is criminally responsible. PENAL § 7.01(a) (West 2011). A person is criminally responsible for an offense committed by another if he intentionally promotes or assists the commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person to commit the offense. *Id.* § 7.02(a)(2).

Appellant argues that the prosecution's theory of the case was that Appellant was the shooter and, therefore, that there should have been no instruction on the law of parties. Appellant contends that the instruction on the law of parties lessened the State's burden of proof and, as a result, caused Appellant some harm.

While the evidence may best support a theory that Appellant was the principal actor, we conclude that there was sufficient evidence to properly submit an instruction on the law of parties. *See Goff v. State*, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996). Appellant and the three other men all actively participated in the offense. *See Gilmore v. State*, 397 S.W.3d 226, 243 (Tex. App.—Fort Worth 2012, pet. ref'd). The evidence showed that they each used a gun in the course of committing the robbery or burglary and that one of the four codefendants shot and killed Ronald Philen.

Further, Appellant's argument that the State's burden of proof was lessened is without merit. Under the law of parties, the State was held to a beyond-a-reasonable-doubt burden of proof, the same standard as that required to determine whether Appellant was the primary actor. Therefore, we overrule Appellant's third issue.

Next, we will address Appellant's fifth issue, in which he argues that the trial court abused its discretion when it allowed inadmissible and harmful statements "under the guise of the statement of co-conspirator rule." Appellant complains that

"[t]he combined effect" of the "drinking game" testimony, Gil blurting out "I found out he stole a grinder from the house," and Gil's testimony regarding Appellant's admission to the shooting was more prejudicial than probative and contrary to the coconspirator rule.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We will reverse a trial court's ruling only if it is outside the "zone of reasonable disagreement." *Id.*

Alicia Bates testified at trial for the State about a drinking game that she played with Appellant sometime after the murder. Bates explained that, during the game, she was to tell something that she had never done before. If anyone had done that particular thing, he was to take a drink of alcohol. When Bates said, "I've never killed anyone," Appellant stated, "Oh, that's f'd up," and, in accordance with the rules of the game, took a drink.

Appellant contends that the testimony was admitted under the coconspirator rule. It was not; rather, it was admitted as an admission by a party-opponent.

Under Rule 801(e)(2)(A) of the Texas Rules of Evidence, a statement is not hearsay if it "is offered against an opposing party" and "was made by the party in an individual or representative capacity." The statement Bates testified to was made by Appellant and offered against Appellant; therefore, it is not hearsay and was properly admitted under the party-opponent rule.

Gil testified at trial that, when they arrived back at Appellant's house after the shooting, Appellant apologized for shooting Ronald Philen and said that he shot Ronald Philen "because he saw him reaching for something, he thought he was going to hurt him." Defense counsel objected to the testimony on hearsay grounds, and the trial court admitted the statement under the statement-against-interest exception and as a coconspirator statement. We will uphold a trial court's ruling if it is

4

reasonably supported by the record and is correct under any theory of law. *Hayden v. State*, 296 S.W.3d 549, 553 (Tex. Crim. App. 2009). Even if Gil's testimony was improperly admitted as a statement against interest or as a coconspirator statement, the statement that Gil testified to was made by Appellant and offered against Appellant; therefore, it could have been properly admitted under the party-opponent rule. Thus, we cannot say that the trial court abused its discretion when it admitted Gil's statement.

While testifying and without being prompted, Gil divulged, "I didn't hear it personally from [Appellant] about the grinder, but I found out he stole a grinder from the house." Appellant contends that this testimony was inadmissible and harmful. However, at Appellant's request, the trial court struck the response and instructed the jury not to consider it for any purpose. We presume that the jury followed this instruction. *See Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). Therefore, no reversible error occurred in connection with Gil's testimony about the grinder.

Rule 403 of the Texas Rules of Evidence provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403; *see Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). A trial court is presumed to have engaged in the required balancing test when Rule 403 is invoked. *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997) (citing *Santellan v. State*, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997)). An analysis under Rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for

the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006).

We conclude that the trial court did not abuse its discretion when it determined that the statements should not be excluded under Rule 403. The statements were highly probative. Both statements constituted evidence that Appellant was involved in the murder, and Bates's testimony was evidence that Appellant had killed someone. Additionally, the State had a serious need for this testimony. First, Bates was not involved in the murder, and her testimony as an independent witness was crucial to the State's case. Second, Appellant asserted at trial that Gil lied about Appellant's involvement to avoid the death penalty in his own case, and this evidence rebuts Appellant's assertion. Therefore, Appellant's fifth issue is overruled.

In Appellant's first issue, he argues that the trial court abused its discretion and denied Appellant his Sixth Amendment right when it denied his request that trial counsel be appointed to handle this appeal. Appellant contends that the trial court exceeded its authority when it destroyed Appellant's relationship with his trial counsel because both Appellant and his trial counsel urged the continuation of their attorney-client relationship.

A criminal defendant is entitled to counsel of his choice if he is able to pay for the counsel. *Powell v. Alabama*, 287 U.S. 45, 53 (1932). However, an indigent defendant does not have the right to the appointment of counsel of choice. *Stearnes v. Clinton*, 780 S.W.2d 216, 221 (Tex. Crim. App. 1989). Additionally, the Texas Code of Criminal Procedure provides that the "court shall appoint an attorney from a public appointment list." TEX. CODE CRIM. PROC. ANN. art. 26.04(a) (West Supp. 2015).

Evan Pierce-Jones was appointed to represent Appellant at the trial court level. After the completion of all of the trial court proceedings, the trial court was required

to appoint a qualified appellate attorney from the public appointment list. *Id.* Pierce-Jones was not on the appellate counsel appointment list in the 35th Judicial District. Therefore, the trial court did not abuse its discretion when it denied Appellant's request that trial counsel be appointed to handle the appeal. Appellant's first issue is overruled.

In Appellant's second issue, he argues that Section 12.31(a)(2) of the Texas Penal Code violates the Eighth Amendment prohibition of cruel and unusual punishment as applied to him. Section 12.31(a)(2) provides that "[a]n individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment . . . for . . . life without parole, if the individual committed the offense when 18 years of age or older." The Eighth Amendment prohibits cruel and unusual punishments and "guarantees individuals the right not to be subjected to excessive sanctions." *Roper v. Simmons*, 543 U.S. 551, 560 (2005); *see* U.S. CONST. amend VIII.

At the time of the offense, Appellant was nineteen years old. In *Miller v. Alabama*, the Supreme Court held that mandatory life imprisonment without parole for those under the age of eighteen at the time of their offense violates the Eighth Amendment's prohibition on cruel and unusual punishments. 132 S. Ct. 2455, 2460 (2012). Appellant argues that "there must be individualized sentencing of youthful offenders" and contends that "[t]hat is a logical and necessary extension of *Miller*."

The State argues that the holding in *Miller* is explicitly limited to offenders who are under the age of eighteen at the time of their offense and that such expansion of *Miller* runs afoul of all other case law. We agree with the State and its reasoning, and we decline to extend *Miller*. Appellant's second issue is overruled.

In Appellant's fourth issue, he contends that the trial court abused its discretion when it allowed inadmissible evidence of extraneous misconduct. The

State asserts that the evidence was admissible to prove motive, to rebut defensive theories, to show identity, or to corroborate accomplice witness testimony.

Again, we review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery*, 810 S.W.2d at 391. We will reverse a trial court's ruling only if it is outside the "zone of reasonable disagreement." *Id.* Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. TEX. R. EVID. 404(b). The rule further provides that evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* A trial court's ruling on the admissibility of evidence will be upheld if the record reasonably supports the ruling and is correct under any theory of law applicable to the case. *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

The State offered evidence of a February 20, 2010 traffic stop in which Appellant was an occupant in Steven Navarro's vehicle. Steven Navarro is Appellant's brother. The traffic stop ultimately led to the search of Appellant's apartment and Steven's apartment. Appellant lived in an apartment with his mother, and she granted consent to search the apartment. In the search of Appellant's room, officers with the Early Police Department found marihuana, marihuana grinders, three .22-caliber rounds, plastic baggies, and a glass smoking pipe. Marihuana found in Steven's apartment was packaged in individual bags for sale. The State argued at trial that the evidence in question showed that Appellant, Steven, and the codefendants were drug dealers and that the evidence supplied a motive to steal the marihuana.

Although Appellant argues that the evidence as a whole should be inadmissible, we will look at the evidence from each apartment separately to determine whether the evidence was admissible. Thus, we will first consider the

evidence from Appellant's apartment. The State's theory at trial was that Appellant and his friends were drug dealers who wanted to steal the marihuana and sell it. The State argues on appeal that the extraneous misconduct was circumstantial evidence that Appellant was a drug dealer who sold marihuana. The evidence admitted from Appellant's apartment was all drug related and supported the State's theory. Specifically, a marihuana grinder that was found in Appellant's bedroom was admitted, and it had distinctive characteristics that linked Appellant to the crime currently at issue on appeal. The grinder was decorated with a skull and crossbones with red flames. The grinder belonged to Ronald Philen, but Appellant claimed ownership of it while being interviewed by Trooper Michael Sams. Accordingly, we cannot say that the trial court erred when it admitted the evidence from Appellant's apartment under Rule 404(b) for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We next turn to Steven's apartment. Assuming, without deciding, that the trial court erred when it admitted the evidence from Steven's apartment because it did not show motive, identity, rebut defensive theories, or serve as corroboration of accomplice witness testimony, any error was harmless. The erroneous admission of extraneous offense evidence is nonconstitutional error. *See Hernandez v. State*, 176 S.W.3d 821, 824–25 (Tex. Crim. App. 2005). Rule 44.2(b) of the Texas Rules of Appellate Procedure applies to nonconstitutional errors. Pursuant to Rule 44.2(b), an error is not reversible error unless it affects a substantial right of the defendant. A substantial right is affected when the error has "a substantial and injurious effect or influence in determining the jury's verdict." *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We are not to overturn a conviction due to the erroneous admission of evidence if, after examining the record as a whole, we have fair assurance that the error did not

influence the jury or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). When conducting a Rule 44.2(b) harm analysis based upon the erroneous admission of evidence, an appellate court should consider everything in the record, including:

> [A]ny testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.

*Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005).

When reviewing the evidence as a whole, the admission of the evidence from Steven's apartment did not harm Appellant. The trial court gave the following instructions to the jury:

> [E]vidence concerning an alleged offense or offenses and the evidence you've just heard other than the offense alleged in the indictment may only be considered if . . . you believe beyond a reasonable doubt that the Defendant committed such other offense or offenses, if any; and even then, you may only consider such evidence in determining the motive, identity of the Defendant, or to rebut a defensive theory, if any, in connection with the offense alleged against him in the indictment. You're not to consider this evidence for any other purpose.

We presume the jury followed these instructions. *See Coble*, 330 S.W.3d at 292.

Further, other evidence showed that Appellant was involved in the capital murder. Bates testified that Appellant admitted, while playing a drinking game, to killing someone. We earlier held that no error occurred when the "drinking game" testimony was admitted. Appellant's cellmate testified that Appellant admitted that he was concerned about bullets that the police had found in his apartment and also admitted that he was present at the house when Ronald Philen was murdered. Moreover, Appellant told a coworker that he had attempted to steal marihuana from

two guys.  Appellant also lied to the police about his whereabouts on the night of the murder, December 11, 2009.  He said that he spent the night with his girlfriend, Shaunta Denison, but they did not start dating until June of 2010.  Lastly, the unique grinder, which belonged to Ronald Philen and was found in Appellant's bedroom and claimed by Appellant, was some evidence that Appellant was involved in the murder.

Based on our review of the record, we find that the admission of the extraneous bad acts, even if error, likely had no influence, or only a slight influence, on the jury's verdict.  *See Johnson*, 967 S.W.2d at 417; *Spencer v. State*, No. 11-02-00306-CR, 2003 WL 22233540, at *3 (Tex. App.—Eastland Sept. 26, 2003, pet. struck) (not designated for publication) (finding the trial court's error in admitting extraneous offenses harmless when the jury was given a limiting instruction and the evidence in favor of the verdict was strong).  We overrule Appellant's fourth issue.

In Appellant's sixth issue, he argues that the trial court abused its discretion when it denied Appellant's motion for a new trial based upon the spoliation of evidence.  Specifically, Appellant contends that he was denied due process as a result of the "sloppy police work and exceedingly contaminated crime scene."  Appellant does not suggest any bad faith on the part of the officers; instead, he points to the "numerous failures to lift fingerprints," the failure to perform any "touch DNA" analyses, and the absence of luminol testing.

The spoliation of evidence doctrine concerns the loss or destruction of evidence.  *Torres v. State*, 371 S.W.3d 317, 319 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *White v. State*, 125 S.W.3d 41, 43–44 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).  When the spoliation concerns potentially useful evidence, the defendant bears the burden of establishing that the State lost or destroyed the evidence in bad faith.  *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010); *Torres*, 371 S.W.3d at 319.

Defense counsel questioned Robert Mullins, a retired police detective with the Brownwood Police Department, about several items that were photographed but not seized when the crime scene was processed. Those items appeared to have blood on them. After the crime scene was processed, the items that were not seized were released to Penny Lawson, a family member of Ronald Philen. Detective Mullins testified that the police seized all of the physical evidence at the crime scene that he believed had any relevance to Ronald Philen's murder. Additionally, he stated that he had nothing to do with what happened to those items once they were released to Lawson.

Defense counsel also asked Larry Owings, a former detective with the Brownwood Police Department, about fingerprints taken throughout the house, specifically pointing to fingerprints taken from the door panel in Ronald Philen's bedroom and from Ronald Philen's exposed skin, and about whether the door was "luminol'd" or tested for any human blood, tissue, or hair. Owings stated that the fingerprints from the door panel were preserved at the scene and were photographed and tested later at the police department. Additionally, Owings explained that luminol, Blue Star, or other liquid used to test for blood could "mess" with any latent prints on the door.

The record does not contain any evidence that the State acted in bad faith. Additionally, there is no indication that any of the evidence that was not preserved was potentially exculpatory or potentially useful. *See Ex parte Napper*, 322 S.W.3d at 229–40; *Brecheen v. State*, 372 S.W.3d 706, 711 (Tex. App.—Eastland 2012, pet. ref'd). We hold that the trial court did not err when it denied Appellant's motion for new trial insofar as it was based upon the spoliation of evidence. Appellant's sixth issue is overruled.

In Appellant's seventh issue, he argues that "[t]he cumulative effect of extensive spoliation of evidence, an overabundance of leading questions by the

12

prosecution, as well as the prosecution's use of false evidence" entitles Appellant to a new trial. Specifically, Appellant argues that his due process right to a fundamentally fair trial was violated because of these errors.

The State argues that each allegation is individually meritless and, therefore, that no error exists to cumulate. We agree.

We discussed the spoliation of evidence above and held that no error occurred; thus, it did not contribute to any cumulative error.

On direct examination, leading questions should be used only when necessary to develop a witness's testimony. TEX. R. EVID. 611(c). The decision to allow leading questioning is within the discretion of the trial court. *Wyatt v. State*, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000); *Mega Child Care, Inc. v. Tex. Dep't of Protective & Regulatory Servs.*, 29 S.W.3d 303, 308 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Abuse of discretion cannot be shown unless the appellant demonstrates that he was unduly prejudiced as a result of such questioning. *Wyatt*, 23 S.W.3d at 28.

Appellant does not direct us to any of the "overabundance" of leading question violations committed by the State that allegedly denied him "one tolerably fair trial." Appellant makes only a general claim that the use of leading questions caused him harm. Additionally, at the request of defense counsel, the trial court gave the jury an explanation of what a leading question was, told the jury when a leading question could be used, and specifically stated that the prosecution was instructed not to lead the witness. Further, the jury was instructed in the jury charge that statements made by lawyers and questions asked by attorneys were not evidence. We also note that the trial court sustained objections to leading questions when appropriate. Thus, no error occurred from the State's use of leading questions.

Appellant also contends that the diagram of the interior of Ronald Philen's residence offered by the State is "false" evidence. At trial, defense counsel objected

13

to the diagram on the ground that it was not a "fair and accurate rendition of the floor plan." The State, however, explained in the presence of the jury that the diagram was not to scale, was only a "general layout" of Ronald Philen's house, and was for demonstrative purposes only. The trial court overruled the objection. The State contends that Appellant has not shown that any false evidence was offered, and we agree. No error occurred with the admission of the diagram of Ronald Philen's house.

Accordingly, we have determined that each claim is individually meritless; thus, we hold that Appellant's cumulative-effect claim is also meritless. Appellant's seventh issue is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


August 11, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.